UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLIOT PORCO,

                            Plaintiff,

    -v-

LEXINGTON INSURANCE COMPANY,

                            Defendant.

Case No. 08 CV 6951 (KMK)

OPINION AND ORDER

Appearances:

Johnathan C. Lerner, Esq.
Abraham, Lerner & Arnold, LLP
New York, N.Y.
*Counsel for Plaintiff*

Jacob R. Zissu, Esq.
Clausen Miller, PC
New York, N.Y.
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Before the Court are cross motions for partial summary judgment in a dispute over insurance coverage of a swimming pool owned by Plaintiff. For the reasons stated herein, Plaintiff's cross-motion for partial summary judgment is denied, and Defendant's motion for partial summary judgment is granted.

## I. Background

### A. Facts

    The material facts in this case are not disputed. Plaintiff is the owner of a house in Scarsdale, New York. (Statement of Undisputed Material Facts Pursuant to Local Civil R. 56.1(b) & (c) ("56.1 Stat.") ¶ 1.) Defendant is an insurance company that issued an insurance

policy (the "Policy") which was effective from June 4, 2006 to June 4, 2007. (*Id.* ¶¶ 2-3.) A swimming pool located on Plaintiff's property was damaged on or about June 2, 2007. (Mem. of Law in Opp'n to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. ("Pl. Mem.") 6.) There is no dispute concerning whether the damage occurred during the covered period. (*Id.*; Mem. of Law in Supp. of Def.'s Mot. for Partial Summ. J. ("Def. Mem.") 5-6.) There is a dispute, however, as to whether the swimming pool is covered under an exclusion contained within the Policy, but that issue is not presented in these summary judgment motions. (Def. Mem. 7.)

The only issue before the Court is what section of the Policy covers the damage to the swimming pool. (*Id.*; Pl. Mem. 6.) The Policy offers different coverage for four categories of property but the only two relevant to these proceedings are "Coverage A," which covers the dwelling and structures attached thereto, and "Coverage B," which covers "[o]ther [s]tructures" on the Plaintiff's property. (56.1 Stat. ¶ 4.) The liability limit for Coverage A is $512,000. (*Id.* ¶ 11). The liability limit for Coverage B is $51,200. (*Id.* ¶ 5.) Plaintiff, having suffered approximately $237,146 in damages, claims that the swimming pool is covered under Coverage A. (Pl. Mem. 5, 7.) Defendant counters that the swimming pool is covered under Coverage B. (Def. Mem. 7.)

As is undisputed from both the pictures and physical descriptions from the Parties, Plaintiff's pool is reached from the dwelling by "exit[ing] the rear sliding doors [of the dwelling] onto the patio, and walk[ing] down five (5) steps onto the pool deck and into the pool." (Pl. Mem. 10 (footnote omitted).) The filtration system for the pool is located in the dwelling, with pipes running from the dwelling to the pool. (*Id.*) There is also a fence that surrounds the pool.

(*Id.* at 11.) The pool is not covered by the dwelling's roof (or, indeed, any roof). (Aff. of Robert Herb in Supp. of Def.'s Mot. for Partial Summ. J. ("Herb Aff."), Ex. B.)

### B. Policy Language

The Parties agree on the controlling language in the Policy, the relevant portions of which are:

> A. Coverage A – Dwelling
>     1. We cover:
>         a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;
>         . . .
> B. Coverage B – Other Structures
>     1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

(*Id.* at Ex. A.) The outcome of these motions, therefore, turns on the interpretation of "structures attached to the dwelling" under Coverage A, and "set apart from the dwelling by clear space" and "structures connected to the dwelling by only a fence, utility line or similar connection" under Coverage B.

### C. Procedural History

Plaintiff filed a complaint in Westchester Supreme Court on or about June 30, 2008, seeking $237,146 for replacement of the pool. (Notice of Pet. for Removal ¶¶ 1, 4.) Defendant timely removed the action to this Court on August 4, 2008, based on diversity of citizenship. (*Id.* ¶ 6.) Defendant filed its Motion for Partial Summary Judgment seeking to limit its liability to $51,200 under Coverage B of the Policy. (Def. Mem. 7.) Plaintiff cross-moved for partial summary judgment seeking coverage under Coverage A. (Pl. Mem. 5.) The Court held oral argument on December 1, 2009.

II. Discussion

A. Standard of Review

1. Summary Judgment Standard

Summary judgment may be granted where it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his [or her] favor."). "When the moving party has carried its burden under Rule 56(c),

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). A fact is material when "it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

### 2. Interpretation of Contracts

Neither party disputes that this case is governed by New York law. (Def. Mem. 8-9; Pl. Mem. 8-14 (repeatedly citing New York law)); *see also Postlewaite v. McGraw-Hill, Inc.* 411 F.3d 63, 67 (2d Cir. 2005) (applying New York law when the parties did not dispute that it applied). Because insurance policies are contracts by another name, this Court will apply New York's substantive law of contracts. *See In re Covert*, 761 N.E.2d 571, 576 (N.Y. 2001) ("Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contractual interpretation." (internal citation omitted)).

"Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (citing *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)). Thus, the Court's analysis properly starts with the four corners of the Policy to determine if there is any ambiguity. *See RJE Corp. v. Northville Indus.*

5

*Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (where a "'contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence'" (quoting *De Luca v. De Luca*, 751 N.Y.S.2d 766, 766 (App. Div. 2002))); *Terwilliger*, 206 F.3d at 245 ("[M]atters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." (citing *Teitelbaum Holdings, Ltd. v. Gold*, 396 N.E.2d 1029, 1032 (N.Y. 1979))). Ambiguity is not to be found solely because the Parties urge different interpretations of the Policy. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."); *O.D.F. Optronics Ltd. v. Remington Arms Co.*, No. 08-CV-4746, 2008 WL 4410130, at *11 (S.D.N.Y. Sept. 26, 2008) ("'The language of a contract is not made ambiguous simply because the parties urge different interpretations.'" (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992))). A court may grant summary judgment when the contractual language is "'plain and unambiguous.'" *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 164 (2d Cir. 2005) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 148 (2d Cir. 1993)); *see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) ("Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" (alteration in original) (quoting *Breed*, 385 N.E.2d at 1282)).

These basic rules of contract interpretation are not altered by the fact that the contract at issue in this case is an insurance policy. *See In re Covert*, 761 N.E.2d at 576; *Lavanant v. General Accident Ins. Co. of Am.*, 595 N.E.2d 819, 822 (N.Y. 1992) ("The principles governing

interpretation of insurance contracts are well settled. Unambiguous provisions of a policy are given their plain and ordinary meaning."). However, ambiguity in an insurance contract is resolved against the insurer – in this case, the Defendant. *See Lavanant*, 595 N.E.2d at 822 ("[W]here there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer." (citations omitted)); *242-44 East 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*, 815 N.Y.S.2d 507, 511 (App. Div. 2006) ("Where an insurance policy reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be construed in favor of the insured and against the insurer, drafter of the policy language." (internal citation omitted)).[1]

B. The Policy

Plaintiff, invoking the adage that "a picture is worth a thousand words," claims that Coverage A of the Policy applies because his pictures show that the swimming pool is "attached" to the dwelling (house). (Pl. Mem. 8, 9-10.) In particular, Plaintiff asserts that "[t]o reach the pool, one needs only to exit the rear sliding doors onto the patio, and walk down five (5) steps onto the pool deck and into the pool." (*Id.* at 10 (footnote omitted).) Plaintiff further notes that, "the fil[t]er system for the pool, including the pipes that run from the pool to the fil[t]er, is located within the subject premises," referring to the house. (*Id.*) Thus, Plaintiff contends, the swimming pool meets the dictionary definition of "attached," as it is "adjacent to and typically connected with another building or room." (*Id.* at 9-10, 9 n.7 (quoting *The Oxford*

---

[1] The Parties disagree about which of them has the ultimate burden of proving that the loss at issue is covered under Coverage A. (Def. Mem. 9.) The resolution of this issue – that is, who bears the burden of demonstrating that a limitation, as opposed to an exclusion, in an insurance contract applies – is not settled. However, the Court finds that the outcome of its analysis would be the same if Defendant bears the burden on this point.

7

*Pocket Dictionary of Current English* (2009).)[2] Relatedly, Plaintiff argues that the pool deck, steps and patio do not constitute "clear space," because "clear" means "unhampered by restriction or limitation." (*Id.* at 11.) Plaintiff expands upon this argument by saying that "there is no logical difference between a roof that extends to cover ones [sic] head versus a deck that extends to support under foot," and that the difference between a lawn, on the one hand, and a deck or roof, on the other, is that the latter are "manmade and constructed out of building materials." (Reply Mem. of Law in Further Supp. of Pl.'s Cross-Mot. for Partial Summ. J. ("Pl. Reply Br.") 8 (emphasis removed).) As a back-up position, Plaintiff claims that the Policy is sufficiently ambiguous to prevent Defendant from prevailing in its partial summary judgment motion. (Pl. Mem. 13.)

Defendant, of course, has a contrary view. First, Defendant begins with the unassailable but nondispositive proposition that a swimming pool is not a dwelling. (Def. Mem. 11 (citing *Tarquini v. Town of Aurora*, 570 N.E.2d 186, 189 (N.Y. 1991) (noting that a "swimming pool is clearly not a building" under Executive Law §§ 370-383)).) Second, Defendant, no less a fan of pictures than Plaintiff, claims that its and Plaintiff's pictures show that the swimming pool is in fact separated from the dwelling by the clear space represented by the pool deck. (*Id.* at 12.) Third, Defendant argues that the pipes running from the dwelling to the swimming pool are a similar connection to "utility lines" and precisely what makes the swimming pool an "other structure" under Coverage B. (Def.'s Reply Mem. in Supp. of its Mot. for Partial Summ. J. &

---

[2]The Court is unable to confirm this citation by reference to the original, but the same definition, citing the same source, can be found at Encylopedia.com, http://www.encyclopedia.com/doc/1O999-attached.html (last visited Dec. 15, 2009).

8

Mem. in Opp'n to Pl.'s Cross-Mot. 3.) Thus, Defendant contends, the Policy is unambiguous and covers the damages to the swimming pool, at most, under Coverage B.

The Court finds that the language in Coverage A and Coverage B and the sparse caselaw support Defendant's position. The key phrase in Coverage A, as it applies to this dispute, is "attached to the dwelling." Nobody disputes that the house is the dwelling, and that the pool obviously is not, so the question is what it means for a structure to be "attached" to the dwelling. Plaintiff cites one dictionary to argue that "attached" means "adjacent to and typically connected with another building or room." (Pl. Mem. 9 & n.7 (quoting *The Oxford Pocket Dictionary of Current English* (2009)).) However, the broader definition of "attached" in the same dictionary is "joined or fastened to something." *See* Encylopedia.com, http://www.encyclopedia.com/doc/1O999-attached.html (last visited Dec. 15, 2009). Indeed, even Plaintiff's definition requires the attached thing to be "adjacent to" *and* "connected with" the building or room. Because "connected" means "joined or linked together," *see* Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/connected (last visited Dec. 15, 2009), even Plaintiff's definition requires one structure to be joined or linked to another in order to be "attached." This is precisely the same meaning ascribed to "attached" in other dictionaries. Merriam Webster defines "attach" to mean "to make fast (as by tying or gluing)" and suggests synonyms such as "adhere" and "fasten." *See* Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/attach (last visited Dec. 15, 2009). Similarly, the Oxford English Dictionary defines "attach" to mean "[t]o tack on, fasten, affix, connect." *See* Oxford English Dictionary, http://dictionary.oed.com (search for "attach;" then follow hyperlink "attach, *v.*") (last visited Dec. 22, 2009); *see also* Dictionary.com, http://dictionary.reference.com/browse/attach (last visited Dec. 15, 2009) (defining "attach" to

9

mean "to fasten or affix; join; connect"). Under these definitions, more is required than that the two objects be adjacent to or even touch each other for them to be "attached." Some form of connection is required beyond mere spatial proximity. No such connection between the pool deck and the stairs leading to the patio has been alleged here, let alone directly between the pool and the dwelling.

The plain language of "attached" renders unpersuasive Plaintiff's claim that the dwelling is connected to the pool via the back patio, the steps, and the pool deck. In essence, Plaintiff asserts that because the house is "connected to" the patio, and the patio is "connected to" the steps, and the steps are "connected to" the pool deck, and the pool deck is "connected to" the pool, by some transitive property, the pool is "attached" to the house and, therefore, Coverage A applies. If the patio is joined or fastened to the dwelling, as it would seem to be, then that might distinguish the patio from a lawn or other obviously clear space separating the house from other structures. However, a dwelling might well be connected to a patio, and the patio to a walkway, and a walkway to a dog house or a mail box, but it would be absurd to conclude that the dog house and mail box are "attached" to the dwelling. Plaintiff's implicit argument that manmade structures that are all connected to each other have a property of being "attached" must, therefore, be limited in some way.

That limitation is found in the language of the Policy as applied to the relationship between the structure at issue and the dwelling. Here, the photos reveal that the pool is at a lower elevation than the dwelling. There is also a fence between the pool and the dwelling. The patio that is attached (i.e. joined or fastened) to the dwelling is separated from the pool deck by a flight of stairs. Even granting that the patio and stairs are attached to the dwelling and that the pool deck is attached to the pool, it strains the ordinary use of "attached" to argue that the steps,

fence, and elevation do not set the dwelling apart from the pool. Put another, simpler way, the pool is indisputably not joined or fastened to the dwelling, and the fact that the pool deck is between the stairs and the pool, even if they touch each other, does not change the analysis.

Similarly, nothing in the language of Coverage B supports Plaintiff's position. First, while the Court is unaware of any dictionary definition of the phrase "clear space," Plaintiff defines the phrase as an area "unhampered by restriction or limitation." (Pl. Mem. 11.) Indeed, the dictionary definition of each word making up the phrase would suggest that "clear space" is an "extent set apart or available" (the definition of "space") that is "unhampered by restriction or limitation" (the definition of "clear"). *See* Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/space (last visited Dec. 15, 2009) (defining "space"); *id.* at http://www.merriam-webster.com/dictionary/clear (last visited Dec. 15, 2009) (defining "clear").[3] Like the definition of "attached," this is hardly the stuff of ambiguity. And, applying this straightforward definition, the Court finds that the pool deck is clear space separating the dwelling (even if defined to include the stairs from the back patio) from the swimming pool. Plaintiff disagrees, claiming that the cement surface of the deck somehow

---

[3]Other dictionaries provide similar definitions. *See* Oxford English Dictionary, http://dictionary.oed.com (search for "space;" then follow hyperlink "space, *n.*[1]") (last visited Dec. 22, 2009) (defining "space" as "[p]hysical extent or area; extent in two or three dimensions"); *id.* at http://dictionary.oed.com (search for "clear;" then follow hyperlink "clear, *a.*, *adv.*, and *n.*") (last visited Dec. 22, 2009) (defining "clear" as "[f]ree from encumbering contact; disengaged, unentangled, out of reach, quite free; quit, rid"); Dictionary.com, http://dictionary.reference.com/browse/space (last visited Dec. 15, 2009) (defining "space" as "extent or area in two dimensions; a particular extent of surface"); *id.* at http://dictionary.reference.com/browse/clear (last visited Dec. 15, 2009) (defining "clear" as "free from obstructions or obstacles; open"); TheFreeDictionary.com, http://www.thefreedictionary.com/space (last visited Dec. 15, 2009) (defining "space" as "[a]n extent or expanse of surface or three-dimensional area"); *id.* at http://www.thefreedictionary.com/clear (last visited Dec. 15, 2009) (defining "clear" as "free from impediment, obstruction, or hindrance; open).

hampers the area between the house and the pool. (Pl. Mem. 11; Pl. Reply Br. 8-10.) In fact, common sense says otherwise; the purpose of a flat surface between the stairs and the pool is to clear the way from the house to the pool. At a minimum, the Court is at a loss to understand how cement is any more of a restriction of the space than grass would be. Indeed, given Plaintiff's counsel's acknowledgment at oral argument that the use of a lawn between the stairs and the pool would be clear space, the Court concludes that the pool deck is "clear space" and makes the pool an "other structure" under Coverage B. Moreover, the Court finds, with little difficulty, that the connection between the pool and the dwelling through the filtering pipes is precisely the type of "similar connection" to a "utility line" that also defines "other structures" in Coverage B. Indeed, Plaintiff's counsel did not try to suggest otherwise at oral argument.[4]

Plaintiff's imaginative interpretation of the Policy also finds no ally in the caselaw. As an initial matter, the Court has found no decisions holding that the plain language used in Coverage A and Coverage B is ambiguous. The Court's research, in fact, shows that this language is routinely used in homeowners' insurance policies. *See Shelter Mut. Ins. Co. v. Simmons*, 293 F. App'x 273, 275 (5th Cir. 2008) (unpublished per curiam opinion); *Haught v. State Farm Gen. Ins. Co.*, No. 08-CV-20, 2009 WL 2235937, at *2 (E.D. Mo. July 27, 2009); *Lee v. Nationwide Ins. Co.*, No. 08-CV-664, 2009 WL 742766, at *2 (S.D. Miss. Mar. 17, 2009); *Mentesana v. State Farm Fire and Cas. Co.*, No. 07-CV-456, 2008 WL 2225737, at *2 (W.D.

---

[4]If the pool deck constitutes "clear space," then Plaintiff's argument that *both* a utility line and a fence connect the dwelling and the pool is irrelevant. (Pl. Mem. 11-12.) Coverage B defines an "other structure[]" as "on the 'residence premises' [and] set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection." (Herb. Aff., Ex. A.) The reference to a fence, utility line or similar connection is a list of non-exhaustive examples of the sort of connections that would not negate the existence of clear space. It is not the test of whether clear space exists.

Mo. May 28, 2008); *Rothberg v. Cincinnati Ins. Co.*, No. 06-CV-111, 2008 WL 833201, at *10 (E.D. Tenn. Mar. 27, 2008); *Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584 (S.D. Miss. 2008); *Allstate Ins. Co. v. Breeden*, No. 01-CV-1686, 2007 WL 4480759, at *14 (D. Or. Dec. 17, 2007); *Langhorne v. Fireman's Fund Ins. Co.*, 432 F. Supp. 2d 1274, 1281 n.14 (N.D. Fla. 2006); *Arch v. Nationwide Mut. Fire Ins. Co.*, No. 88-CV-5421, 1988 WL 122408, at *1 (E.D. Pa. Nov. 10, 1988); *Lazechko v. Auto Owners Ins. Co.*, No. 276111, 2008 WL 2697428, at *4 (Mich. Ct. App. July 10, 2008). More to the point, Plaintiff offers no cases, and the Court is unaware of any, where a court has found this language to be ambiguous. In fact, in *Lazechko*, the Court of Appeals of Michigan interpreted provisions identical to Coverage B in this case, which provided coverage for "other structures" that are "separated from [the] dwelling by clear space," and structures "attached to [the] dwelling by only a fence, utility line, or similar connection." *Lazechko*, 2008 WL 2697428, at *4. In *Lazechko*, the issue was whether a garage connected to a house by a breezeway was "attached" to the dwelling (and therefore covered under a provision identical to Coverage A in this case), or was an "other structure" (and therefore covered under a provision identical to Coverage B in this case). *See id.* In deciding that the garage was attached to the dwelling by the breezeway, the *Lazechko* court determined that "[t]here was no ambiguity in the policy." *Id.*[5]

Plaintiff's position is also contrary to the only decisions that have applied identical coverage language to undisputed facts about the property at issue. As noted above, Plaintiff's strained effort to "attach" the swimming pool to the dwelling ignores the "clear space" between

---

[5]In holding that the breezeway attached the house to the garage and, therefore, that the garage was covered under Coverage A, *Lazechko* also sinks Plaintiff's claim that there is no difference between a pool connected to a house through a roof, and one connected through an uncovered pool deck. (Pl. Reply Br. 8.)

13

the dwelling and the pool that is represented by the pool deck. Indeed, the cases teach that both Coverage A and Coverage B have to be read together to make sense out of the Policy and to determine the Parties' expectations in the contract. *See Shelter Mut. Ins. Co.*, 293 F. App'x at 275 (reading the two provisions together); *Mentesana*, 2008 WL 2225737, at *2 (same); *Rothberg*, 2008 WL 833201, at *10 (same); *Arch*, 1988 WL 122408, at *2-3 (same). Though Plaintiff points out that the word "attached" in Coverage A is not expressly defined in the Policy, at least one court has determined that the "ordinary meaning" of that word "is the physical union or joining of two structures." *Mentesana*, 2008 WL 2225737, at *2. Moreover, "[a]ny reasonably intelligent person reading Coverage 'B' of the [P]olicy would conclude for a structure to be considered an 'other structure,' it must be separated from the dwelling by clear space." *Arch*, 1988 WL 122408, at *2 (interpreting an identical insurance policy provision). Here, because of the photographs and the physical descriptions provided by the Parties, there is no factual dispute that the pool deck separates the swimming pool from the dwelling (even if the dwelling is defined to include the patio and the back stairs, and even if the pool deck is adjacent to and touches the back stairs). Furthermore, the courts that have addressed the issue have held that the mere fact that such clear space is made of concrete (regardless of whether it is called a deck or a porch or a patio) makes it no less set apart or less clear a space from the dwelling than if it were grass, sand, turf, or some other surface. *See id.* at *3 ("A patio is not akin to a party wall, which serves the function of attaching a garage, for example, to a dwelling. Rather, a patio merely comprises part of one's yard as does any lawn or garden."). "While the clear space is a concrete [pool deck], rather than grass, it still provides separation from the house." *Mentesana*, 2008 WL 2225737, at *3.

Plaintiff seeks to avoid the results of *Arch* and *Mentesana* by pointing out that these decisions are not binding on this Court and urging the Court to reject them as "unreasonable" and "inconsistent." (Pl. Reply Br. 7-8.) The Court understands that these decisions are not binding, but notes that Plaintiff has not offered a single case to support his position. The Court also notes that it appears that there is no binding authority from the Second Circuit or any New York court on this issue. Moreover, the Court's own research has not yielded any cases that help Plaintiff. There are two decisions which summarily concluded that factual disputes prevented those courts from determining whether certain structures were attached to the dwelling or were "other structures." *See Rothberg*, 2008 WL 833201, at *10 (finding that a jury could conclude that the swimming pool, retaining wall, and patio were part of the dwelling); *Breeden*, 2007 WL 4480759, at *14-15 (holding that ambiguity in photographs combined with insured's testimony about structure of a hot tub created factual dispute about whether hot tub was attached to the dwelling). As noted above, there are no factual disputes about the layout of the dwelling and the swimming pool, and thus these cases are distinguishable.

Therefore, the Court finds that Coverage B, and not Coverage A, applies to any insurance coverage that Plaintiff can recover for damage to his swimming pool.

### III. Conclusion

For the reasons stated herein, the Defendant's Motion for Partial Summary Judgment, (Dkt. No. 11), is granted and the Plaintiff's Cross-Motion for Partial Summary Judgement, (Dkt. No. 12), is denied. The Clerk is respectfully requested to terminate the motions.

SO ORDERED.

Dated:    December 30, 2009
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List (by ECF):

Johnathan C. Lerner, Esq.
Abraham, Lerner & Arnold, LLP
292 Madison Avenue, 22nd Floor
New York, NY 10017
jlerner@abrahamlernerarnold.com

Jacob R. Zissu, Esq.
Clausen Miller, PC
One Chase Manhattan Plaza, 39th Floor
New York, NY 10005
jzissu@clausen.com